UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENNIFER DAWN ROAHRIG,

     Plaintiff,

         v.                           CAUSE NO. 3:21-CV-270-RLM-MGG

ZACHARY NOVAK,

     Defendant.

<u>OPINION AND ORDER</u>

Jennifer Dawn Roahrig, a prisoner without a lawyer, proceeds on an Eighth Amendment claim against Zachary Novak for failing to protect her against an attack by another inmate at the Elkhart County Correctional Facility on October 8, 2019. Officer Novak moved for summary judgment, arguing that Ms. Roahrig didn't exhaust her administrative remedies with respect to her claim.

According to the Elkhart County Correctional Facility Inmate Handbook, the grievance procedure reads as follows:

1. Grievances will be communicated to the housing officer verbally at the time the issue arises.

    a. If the issue is resolved then the grievance is considered closed.

2. If the grievance is not resolved, the grievance needs to be put in writing on the kiosk to the appropriate shift icon. This must be done within 3 days of the incident.

    a. The kiosk entry must state that it is a formal grievance and that you have completed step 1 by speaking to the housing officer.

    b. This kiosk entry will be answered by the shift sergeant within 7 days.

c. If the issue is resolved, then the grievance is considered closed.

ECF 37-1 at 31-33. The grievance procedure continues in like fashion for five more steps, requiring appeals to the jail warden, the jail commander, the grievance appeal officer, the undersheriff, and the sheriff. Id. Inmates have access to the inmate handbook, the grievance system, and staff inquiries through the kiosks that are available in every ward at the jail. Id. at 5, 12.

Ms. Roahrig was an inmate at the Elkhart County Correctional Facility from September 27 to October 23, 2019. Id. at 3. On October 8, another inmate attacked her, and she was taken to the Elkhart General Hospital but returned the same day. Id. at 4. Officer Novak was being trained in the jail's master control room during the attack. Id. Upon Ms. Roahrig's return, she transferred to the medical ward, where she remained until October 16. Id. at 50. In the two weeks after the attack, Ms. Roahrig used a jail kiosk to submit the following:

> **October 9 - Meals Inquiry:** I was in the hospital yesterday when cold cart was passed out, and I was supposed to get my order. May I please get the things I ordered now? Thank you.
>
> **October 10 - Commissary Inquiry:** I'm housed in medical. Please bring my commissary.
>
> **October 10 - Fresh Express Inquiry:** I was in the hospital Tuesday when you passed out cart. I had an order I still haven't received and am now housed in medical. May I please have my missed order brought to me now? Thank you.
>
> **October 11 - Medical Inquiry:** The ibuprofen 600 doesn't seem to be working. MY head hurts almost as bad as when it happened, and I feel like it's swelling again and getting a sinus infection on top of everything. I don't feel right. Thank you.

**October 12 - Medical Grievance:** Biohazard/contamination. Around 10:30 a.m., I asked about sanitary pads because I started my period. For the last 8 hours, I have been given a run around about getting them: (1) I can't leave the desk; (2) they have to come from booking; (3) booking says to standby. I'm sorry, I can't tell my period to standby or hold on till someone can bring sanitary pads or wait until Tuesday commissary delivery. There is absolutely no excuse to be waiting 8 hours. However, I did just receive two pads. Thank you, but I need more. I put in for them on commissary, but my period won't listen and standby till then. What can be done to fix this situation?

**October 13 - Investigator Inquiry:** I want to make sure I have charges pressed against the person that attacked me in A-1. I have asked several officers and cannot get a direct answer. I need to know I have charges against her because the hospital told the jail medical staff I was to be referred to an ear, nose, and throat specialist. The jail medical staff said that's not something they typically do even though that is what the ER medical doctor advised, so I have to do it when I get out. Under the circumstances, I need to press charges in order to sue for all my medical bills and whatever else may be a direct result of her actions and care received. Thank you.

**October 14 - Medical Inquiry:** My ribs hurt on the left side under my armpit, and my chest feels tight.

**October 15 - First Shift Inquiry:** ATTN: Payne, Myers, & Ryall. Please forgive me for not addressing you formally. I don't mean any disrespect, I just can't remember who is what, sorry. I'm writing in regard of pressing charges on the person that attacked me in A-1 on Tuesday, 10-8-2019. Under the circumstances and extent of the situation, I assumed charges were automatically filed on my behalf. I recently found out that is not accurate and I have to make a request to do so. Since being informed of this, I have been requesting to file charges and trying to find out how to do so. So far, I have not been given any helpful information or help in doing so.

**October 16 - Grievance:** Why am I being moved back into the pod where I was attacked and without being cleared by the doctor.

**October 20 - First Shift Inquiry:** ATTN: Sgt. Myers. I am requesting a physical copy of the handbook please. I realize it is on the kiosk, but I can't sit here and read it on the kiosk.

Id. at 41-49.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. Courts take a "strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Id. at 1025. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015).

4

Officer Novak concedes that Ms. Roahrig might not have been able to complete the seven-step grievance process given that she left the Elkhart County Correctional Facility a mere two weeks after the other inmate attacked her. Officer Novak maintains that Ms. Roahrig should have completed the first two steps, and Ms. Roahrig responds that the grievance process was unavailable to her.

Inmates are only required to exhaust administrative remedies that are available. Woodford v. Ngo, 548 U.S. 81, 102 (2006). The availability of a remedy isn't a matter of what appears on paper but rather whether the process was in actuality available for the prisoner to pursue. Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). If prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies aren't considered available. Id. "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." Dole v. Chandler, 438 F.3d at 809.

Ms. Roahrig argues that the grievance process was unavailable to her because correctional staff declined to provide her with a physical copy of the grievance policy. Though the grievance policy was accessible on the kiosk, she maintains that she couldn't read the electronic version due to the injuries caused by the attack and due to need for other inmates to use the kiosk. It is unclear why Ms. Roahrig needed the grievance policy to use the grievance process. The record reflects that she filed two grievances in October 2019, which, in turn, shows that she knew how to submit a

5

grievance even without the physical copy of the grievance policy. ECF 37-1 at 41, 49. And Ms. Roahrig indicates that correctional staff responded to her verbal inquiries about the grievance process by telling her to direct grievances to particular people or departments through the kiosks consistent with the grievance process. ECF 53 at 2. Because Ms. Roahrig didn't need a physical copy of the grievance policy to file a grievance, the court finds that the grievance process was available to Ms. Roahrig.

The court next considers whether Ms. Roahrig's kiosk submissions were sufficient to satisfy the second step.[1] The purpose of the grievance process is to alert officials to a problem so that action can be taken to remedy the problem. Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011). Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002). "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. at 650. "[T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Id.

Because the grievance procedure has no applicable requirements, the relevant question is whether Ms. Roahrig's grievances were sufficient to alert correctional staff to the nature of her claim against Officer Novak for failing to protect her against an

---

[1] The parties do not dispute whether Ms. Roahrig completed step one of the grievance process. According to the amended complaint, Ms. Roahrig and other inmates used the emergency callbox to report the attack. ECF 14 at 3. These reports seem sufficient to satisfy the requirement that grievances be verbally communicated to the housing officer at the time the issue arises, and Officer Novak offers no argument to the contrary.

attack by another inmate. Three of Ms. Roahrig's kiosk entries mention the attack, but two of those entries were inquiries about how to press charges against her attacker for the purpose of obtaining compensation for her medical expenses. ECF 37-1 at 43-44. The third entry was a grievance complaining about her move from the medical unit to the housing unit where she was attacked and the lack of medical approval for the move. Id. at 41. These entries demonstrate some concern about the attack but primarily focus on compensation for her medical expenses and her concerns about her prospective housing assignment on October 16, 2019, eight days after the attack. There is no indication from these entries that Ms. Roahrig believed that anyone other than the attacker acted inappropriately before, during, or in the immediate aftermath of the attack. At most, these entries highlight the shortcomings of staff members who didn't help her with pressing criminal charges and who were responsible for her housing assignments. Consequently, the court finds that Ms. Roahrig's kiosk entries were not sufficient to satisfy step two of the grievance process.

In sum, the record demonstrates that the grievance process was available to Ms. Roahrig but that she didn't submit a grievance related to her claim against Officer Novak. Because Ms. Roahrig didn't exhaust her available administrative remedies, the motion for summary judgment is granted, and this case is dismissed without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that all dismissals under § 1997e(a) should be without prejudice.").

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 34);

(2) DISMISSES this case without prejudice; and

(3) DIRECTS the clerk to enter judgment and to close this case.

SO ORDERED on January 19, 2023

s/ Robert L. Miller, Jr.

JUDGE

UNITED STATES DISTRICT COURT